IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MAJOR BOB MUSIC,
UNIVERSAL MUSIC CORPORATION,
UNIVERSAL-POLYGRAM
INTERNATIONAL PUBLISHING INC.,
PERREN VIBES MUSIC INC.,
J. ALBERT & SON (USA) INC.,                                   OPINION and ORDER
EMI APRIL MUSIC INC.,
NEW SEA GAYLE MUSIC and                                       09-cv-341-bbc
MORGANACTIVE SONGS, INC.,

                              Plaintiffs,

      v.

GENE ROBERT HEIMAN,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiffs Major Bob Music, Universal Music Corporation, Universal-Polygram International Publishing Inc., Perren Vibes Music Inc., J. Albert & Son (USA) Inc., Emi April Music Inc., New Sea Gayle Music and Morganactive Songs, Inc. contend that defendant Gene Robert Heiman is liable to them for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101-801. Plaintiffs contend that defendant sponsored public performances of five of plaintiffs' musical compositions at a restaurant and dance hall owned

1

by defendant without first having obtained a license to do so from plaintiffs or the American Association of Composers, Authors and Publishers (ASCAP). Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c), costs pursuant to 17 U.S.C. § 505 and injunctive relief pursuant to 17 U.S.C. § 502(a) prohibiting defendant from publicly performing any copyrighted musical composition in the ASCAP repertory without a license. Now before the court is plaintiffs' motion for summary judgment, dkt. #8. Jurisdiction is present under 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights . . . .").

Although defendant Gene Heiman was properly served with plaintiffs' complaint on June 14, 2009, he did not file an answer or otherwise respond to the complaint. In fact, defendant has made no appearance of any kind in this case. He did not participate in the pre-trial conference conducted by Magistrate Judge Crocker, he did not appear for his scheduled deposition and he has not responded to plaintiffs' motion for summary judgment. When a defendant fails to answer or participate in a case, the usual response from plaintiffs is a motion for default judgment, which the court often will grant, particularly if the defendant does not respond to it. In this case, plaintiffs chose to file a motion for summary judgment. Because defendant has not responded in any way to plaintiffs' motion or findings of fact, plaintiffs' proposed findings of fact must be taken as undisputed. <u>Procedure to Be Followed on Motions for Summary Judgment</u>, II.A, II.B and II.C and <u>Memorandum to Pro</u>

Se Litigants Regarding Summary Judgment Motions, attached to Preliminary Pretrial Conference Order (Sept. 9, 2009), dkt. #6.  Because it is clear from the evidence that defendant violated plaintiffs' copyrights, I will grant plaintiffs' motion for summary judgment on their copyright infringement claims.  Fed. R. Civ. P. 56 (summary judgment appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law.")  Also, I conclude that plaintiffs are entitled to $5,000 in statutory damages under 17 U.S.C. § 504(c)(1), $5,328.54 in attorney fees and costs under 17 U.S.C. § 505 and permanent injunctive relief under 17 U.S.C. § 502.

From plaintiffs' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiffs own copyrights in six musical compositions:  "The Thunder Rolls," "I Will Survive," "You Shook Me All Night," "Alcohol" and "The Dance."  Plaintiffs are members of the American Association of Composers, Authors and Publishers (ASCAP), a performing rights society to which they have granted a non-exclusive right to authorize through licensing the non-dramatic public performances of their copyrighted music.  On behalf of plaintiffs, as well as its other ASCAP members, ASCAP licences television and radio networks and stations, restaurants, nightclubs and other establishments the right to publicly perform the

copyrighted musical compositions in the ASCAP repertory. ASCAP contacts owners and operators of establishments that perform music in the ASCAP repertory to advise them of their obligations under federal copyright law and to offer them a license so that they may lawfully perform such music. As part of ASCAP's regular practice and in the course of its regularly-conducted business activity, ASCAP maintains detailed records of all contacts made with every establishment it has licensed or has attempted to license.

Defendant owns and operates Gene'os Red Barn Restaurant and Dance Hall located at 7530 County Highway M in Evansville, Wisconsin. Defendant has primary responsibility for the control, management, operations and maintenance of the business activities of Gene'os, including the direction and supervision of the employees and the determination of the music policy employed at the establishment. On certain nights, patrons of Gene'os perform songs using a karaoke machine. Defendant has never been licensed to perform works in the ASCAP repertory and he has not obtained a license agreement from any of the plaintiffs individually.

Since March 2008, ASCAP representatives have contacted defendant at least 18 times by mail, telephone and in person, to inform defendant of his need to obtain an ASCAP license agreement or to obtain express permission from the individual copyright owners so that he may lawfully perform ASCAP members' copyrighted music at Gene'os. In response to these contacts by ASCAP representatives, defendant refused to discuss licensing, argued

4

with the representatives and on January 13, 2009, threatened an ASCAP representative with a baseball bat. In a letter to plaintiffs' counsel, defendant characterized ASCAP's licensing efforts as "a bunch of bullshit" for which he "will not pay one cent."

On March 7, 2009, an ASCAP investigator heard five songs owned by plaintiffs being performed at Gene'os by means of a karaoke machine ("The Thunder Rolls," "I Will Survive," "You Shook Me All Night," "Alcohol" and "The Dance"). Defendant did nothing to prevent the performances of the copyrighted music. Since March 2009, defendant has continued to offer public performances of copyrighted musical compositions at Gene'os without an ASCAP license or permission from the copyright owners.

Plaintiffs' representatives have incurred $648.53 in expenses engaging an independent investigator to obtain the evidence of the songs performed at Gene'os. If defendant had obtained an ASCAP license, the licensing fees for the period from March 2008 through December 2010 would have totaled $1,728.91.

OPINION

A. Liability

The Copyright Act gives a copyright holder certain exclusive rights in her copyrighted works, including the exclusive right to control public performance of musical works. 17 U.S.C. § 106; ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1454 (7th Cir. 1996) ("Copyright

5

law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission[.]"). To take advantage of their rights under this law, performing rights societies such as ASCAP were formed to negotiate contracts with radio stations, bars, nightclubs and similar establishments so that operators of such establishments would not have to negotiate individual agreements with every composer whose songs they intend to play. Under contracts with ASCAP or similar organizations, operators must pay licensing fees to copyright holders for the right to play copyrighted music for the public. Broadcast Music, Inc. v. Star Amusements, Inc., 44 F.3d 485, 486 (7th Cir. 1995). If the owner of such establishment does not obtain a proper license for performance of copyrighted songs by musicians or disc jockeys, the owner may be liable for contributory or vicarious infringement. Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971); Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co., 36 F.2d 354, 355 (7th Cir. 1929).

To establish copyright infringement, plaintiffs must establish (1) ownership of a valid copyright and (2) unauthorized copying of constituent elements of the work that are original. Janky v. Lake County Convention And Visitors Bureau, 576 F.3d 356, 361 (7th Cir. 2009) (citing Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991). I have found as fact that plaintiffs own a valid copyright in each of the songs at issue and that unauthorized copying occurred when defendant played the works publicly

without the authorization of the copyright owner.  This is sufficient to show unauthorized copying.  Janky, 573 F.3d at 361 (citing Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 157 (1975)).  To "perform" a copyrighted work means "to recite, render, play, dance, or act it, either directly or by means of any device or process . . . ."  17 U.S.C. § 101.  To perform a work "publicly" means "to perform or display it at a place open to the public . . . ."  Id.  "One obvious example of a public performance is a live musical concert before a substantial paying audience."  Broadcast Music, Inc. v. Claire's Boutiques, Inc., 949 F.2d 1482, 1486 (7th Cir. 1991).  On the other hand, a rendition of a copyright song in the shower is not a public performance, and therefore, not infringement.  Twentieth Century Music, 422 U.S. at 155.

   Defendant does not hold a license from plaintiffs or ASCAP.   Even though he did not perform the musical works himself, he can be held contributorily or vicariously liable.  The Supreme Court has explained that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 929-30 (2005) (citing Gershwin Publishing Corp., 443 F.2d at 1162; Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963) (explaining that "cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition

by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income"); see also Dreamland Ball Room, Inc., 36 F.2d at 355 (owner of dance hall liable for copyright violations by band hired to entertain paying customers); Broadcast Music, Inc. v. Miller Associates, Inc., 2006 WL 3064107, *5-6 (W.D. Pa. Oct. 25, 2006) (holding restaurant owner liable for copyright infringement from songs played via disc jockey and live band); Morganactive Songs v. K & M Fox, Inc., 77 U.S.P.Q.2d 1065, 1070 (S.D. Ind. 2005) (holding defendant owners liable for unauthorized performance of copyrighted music via karaoke). Here, defendant encouraged infringement of plaintiffs' copyrighted songs by allowing karaoke at Gene'os, presumably to attract customers. Thus, it is appropriate to hold defendant vicariously liable because he is the owner and operator of Gene'os and derives financial benefit from it.

Finally, I find that defendant is liable for knowing and willful infringement of plaintiffs' copyrights. "[E]vidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness." Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1227 (7th Cir. 1991) (internal quotations omitted). ASCAP representatives notified defendant in writing and by telephone that defendant's unauthorized performances of its members' copyrighted songs would constitute infringement under the Copyright Act. Thus, defendant had clear and sufficient notice that a license was necessary to avoid copyright

8

infringement, yet he refused to obtain a license. Accordingly, I find that defendant acted willfully and knowingly in violating plaintiffs' copyrights.

## B. Statutory Damages

As provided by the Copyright Act, plaintiffs have elected to recover an award of statutory damages in lieu of actual damages and lost profits. Title 17 of the United States Code provides, in relevant part:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). If the infringement was willful, the court has the discretion to increase the award up to $150,000. 17 U.S.C. § 504(c)(2).

The statute invests the district court with wide discretion to set damages within the statutory limits. F.W. Wollworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231-32 (1952); Star Amusements, 44 F.3d at 489 ("The district court ha[s] almost unfettered discretion in setting its statutory damage award within the prescribed range."). In setting statutory damages, the court may consider a variety of factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the

efficacy of the damages as a deterrent to future copyright infringement." Chi-Boy Music, 930 F.2d at 1229 (internal quotations omitted). "Moreover, when the infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations." Id. at 1229-30.

By performing plaintiffs' songs without licenses, defendant saved $625.50 a year in licensing fees. In addition, the record establishes that defendant's infringement was willful. Plaintiffs request $5,000 in statutory damages, or $1,000 for infringement of each of the five copyrighted musical compositions. The $5,000 figure represents approximately three times the license fees that defendant would have owed had he been licensed by ASCAP from March 2008 through the end of this year, plus an additional amount to cover plaintiffs' expense of hiring an investigator to obtain evidence of infringements at Gene'os. The Court of Appeals for the Seventh Circuit has upheld similar awards for statutory damages, concluding that they were appropriate to penalize the infringer and deter future violations. Id. at 1230 (upholding award approximately three times the amount due under licensing agreement); International Korwin Corp. v. Kowalczyk, 855 F.2d 375, 383 (7th Cir. 1988) (same) (noting that "defendants must not be able to sneer in the face of copyright owners and copyright laws. Rather, defendants must be put on notice that it costs less to obey the copyright laws than to violate them.") (internal quotations omitted). I conclude that an award of $1000 for each act of infringement, for a total amount of $5000, is appropriate to

10

penalize defendant for wilfully violating plaintiffs' copyrights and deter him from infringing in the future.

### C. Injunctive Relief

Plaintiffs request that the court enter a permanent injunction against defendant, prohibiting him from performing any music in the ASCAP repertory. The Copyright Act empowers this court to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Before a permanent injunction is issued, a plaintiff is required to satisfy a four-part test, though it is generally "uncontroversial that a 'showing of past infringement and a substantial likelihood of future infringement' justifies issuance of a permanent injunction." Bridgeport Music, Inc. v. Justin Combs Publishing, 507 F.3d 470, 492 (6th Cir. 2007) (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.06 [B] (2007)). The four-part test requires the plaintiff to show "(1) that it has suffered irreparable injury; (2) that remedies at law, such as money damages, are inadequate to compensate for that injury; (3) that, considering a balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." ebay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see also Sierra Club v. Franklin County Power of Illinois, LLC, 546 F.3d 918, 935 (7th Cir. 2008).

In this case, plaintiffs have met all the requirements for a permanent injunction. Although irreparable harm may be hard to prove in a case such as this one, it is possible that defendant's customers may be more inclined to patronize Gene'os and enjoy free entertainment than to purchase plaintiffs' copyrighted songs. Wainwright Securities, Inc. v. Wall Street Transcript Corp., 558 F.2d 91, 94 (2d Cir. 1977) (infringer's actions may reduce demand for plaintiff's own creations or services). Also, unauthorized performances of copyrighted musical compositions take away the copyright owner's ability to control its copyrighted works.

With respect to the second factor, the record strongly suggests that, absent an injunction, defendant will continue to infringe plaintiffs' copyrights. Despite repeated warnings, defendant has continued his infringing activities for months and has shown no signs of stopping. His letter and his actions demonstrate an adamant opposition to honoring plaintiffs' copyrights. It seems highly likely that without an injunction, plaintiffs would have to file a new lawsuit for each violation in order to enforce the copyright laws.

As to the third factor, "it is an accepted equitable principle that a court does not have to balance the equities in a case where the defendant's conduct has been willful." Sierra Club, 546 F.3d at 935. Finally, there is no evidence that the public would be harmed by an injunction requiring defendant to comply with copyright laws. Therefore, an permanent injunction is appropriate.

12

The next question is the scope of the injunction. It could be argued that it should be limited to songs owned by plaintiffs rather than extending to all of the music in the ASCAP repertory. ASCAP is not a plaintiff in this case; this is not a class action in which plaintiffs sought to represent all ASCAP members whose copyrights had been infringed by defendant; plaintiffs are seeking protection for their own copyright interests only; and a broader injunction would be beyond the scope of the infringement found in this case. National Organization for Women, Inc. v. Scheidler, 396 F.3d 807, 817 (7th Cir. 2005) (courts are required to "tailor injunctive relief to the scope of the violation found"); Society for Good Will to Retarded Children, Inc. v. Cuomo, 737 F.2d 1239, 1251 (2d Cir. 1984) ("Injunctive relief should be narrowly tailored to fit the specific legal violations adjudged.")

However, the majority of courts that have decided cases similar to this one have found that the broader injunction covering all ASCAP music is appropriate in cases in which the copyright infringer has demonstrated his unwillingness to obtain a license. E.g., Controversy Music v. Down Under Pub Tyler, Inc., 488 F. Supp. 2d 572, 478 (E.D. Tex. 2007) (granting broad injunction barring defendant from playing any musical composition in ASCAP repertory on ground that individual plaintiffs could be said to represent all other owners of such musical compositions in ASCAP and noting defendant's unwillingness to obtain license despite numerous efforts by ASCAP to persuade him of need for it); All Nations Music v. Christian Family Network, Inc., 989 F. Supp. 863, 869 (W.D. Mich. 1997) (broad

13

injunction covering ASCAP repertory appropriate when infringer took position that "everyone does it," admitted that it had ceased paying license fees to ASCAP and was subject of another ASCAP action for infringement); <u>Canopy Music Inc. v. Harbor Cities Broadcasting, Inc.</u>, 950 F. Supp. 913, 916 (E.D. Wis. 1997) (issuing permanent injunction barring radio station from broadcasting any musical compositions in ASCAP repertory, despite fact that ASCAP not a party; holding that individual plaintiffs represented interests of all ASCAP members whose rights could potentially be infringed by station); <u>Sailor Music v. IML Corp</u>. 867 F. Supp. 565, 569-70 (E.D. Mich. 1994) (imposing injunction prohibiting defendant from utilizing any musical composition in ASCAP repertory upon finding substantial likelihood of further copyright infringement by management of infringing establishment, which was continuing to operate without an ASCAP license, utilizing disc jockeys and live performers, failing to maintain any policy designed to control its musical scores and ignoring three years of warnings by ASCAP); <u>Swallow Turn Music v. Wilson</u>, 831 F. Supp. 575, 581 (E.D. Tex. 1993) ("While the issuance of an injunction is in the discretion of the court, courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists.") (citation omitted)).

    Although ASCAP is not a party to this action, I am persuaded that any injunction should extend to all of the compositions in the ASCAP repertory. Defendant has exhibited his willingness to infringe copyrights, even when warned of the consequences. Without a

14

broad injunction, it is possible that he would feel free to infringe the copyrights of copyright owners other than plaintiffs, thereby forcing ASCAP to undertake additional efforts to monitor his establishment. Therefore, I will issue an injunction enjoining defendant from publicly performing or sponsoring the public performance of any musical composition in the ASCAP repertory.

### D. Attorney Fees and Costs

Finally, plaintiffs request costs and attorney fees in the amount of $5,328.54. Section 505 of the Copyright Act provides in pertinent part:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. In deciding whether to award attorney fees in a copyright case, a court may consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n.19 (1994) (quoting Lieb v. Topstone Industries, Inc., 788 F.2d 151, 156 (3d Cir. 1986)). Also, the Court of Appeals for the Seventh Circuit has held that an award of attorney fees can be an effective method of deterring defendants who have engaged in willful infringement. Chi-Boy Music, 930 F.2d at 1230 (explaining that attorneys fees are

15

"particularly appropriate" where defendant has "treated the copyright laws with disdain"); see also Illinois Bell Telephone Co. v. Haines & Co., 905 F.2d 1081, 1089 (7th Cir. 1990), rev'd on other grounds by 499 U.S. 944 (1991) ("[T]he purpose of an award of attorney's fees in copyright cases is as much to penalize the losing party as to compensate the prevailing party."). In addition, a court may also award attorney fees to encourage the assertion of colorable copyright claims. Chi-Boy Music, 930 F.2d at 1230.

In this case, attorney fees are appropriate because defendant has asserted no non-frivolous legal defense (or any defense at all) and he has asserted no objectively reasonable explanation for his decision to perform copyrighted songs after plaintiffs told him that his actions were infringing. In addition, his response to plaintiffs' attempts at communication were objectively unreasonable and show his "disdain" for the copyright laws. Plaintiffs notified defendant of the license requirement and his infringing activities, offered him the option of purchasing a license to perform the copyrighted songs and attempted to resolve the case without litigation. Defendant flatly refused to purchase a license and threatened ASCAP representatives with physical violence.

Finally, attorney fees in this case serve the purposes of deterring defendant from future infringement and encouraging plaintiffs to assert copyright claims. I have already determined that the record provides ample evidence of willful infringement by defendant. Plaintiffs could have decided that litigation would be more trouble than it was worth in this

case, considering the small amount of statutory damages that will be assessed against defendant, but they decided to file this lawsuit to enforce the copyright laws. Under such circumstances, attorney fees are an appropriate means of compensating plaintiffs for enforcing copyright laws and penalizing defendant for wilfully violating the law with no reasonable basis or non-frivolous justification.

Plaintiffs' counsel, Pamela Heinrich, states in her affidavit that plaintiffs have incurred costs in the amount of $5,328.54 in prosecuting this lawsuit. Dkt. #11. Given defendant's lack of cooperation and his combativeness throughout the investigation and litigation of this case, the quantity of materials submitted by plaintiffs and the lack of objection to the proposed fee award, I conclude that the requested $5,328.54 in costs and fees is reasonable.

ORDER

IT IS ORDERED that

1. The motion for summary judgment, dkt. #8, filed by plaintiffs Major Bob Music, Universal Music Corporation, Universal-Polygram International Publishing Inc., Perren Vibes Music Inc., J. Albert & Son (USA) Inc., Emi April Music Inc., New Sea Gayle Music and Morganactive Songs, Inc. is GRANTED.

2. Plaintiffs are awarded $5,000 in statutory damages under 17 U.S.C. § 504(c)(1)

and $5,328.54 in attorney fees and costs under 17 U.S.C. § 505.

    3. Pursuant to 17 U.S.C. § 502, defendant Gene Robert Heiman is PERMANENTLY ENJOINED from publicly performing or sponsoring public performances of musical compositions in the ASCAP repertory without a proper license or authorization.

    4. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 10th day of May, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge